IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 18-04070 (ESL)

ANA EMILIA ORTIZ JIMENEZ                        CHAPTER 11

    Debtor

## **OPINION AND ORDER**

This case came before the court on October 9, 2018 for a hearing to consider the motion to lift the automatic stay and the motion to dismiss the chapter 11 petition filed by RL Capital International, LLC ("RL"). RL prays for an order lifting the automatic stay provisions of section 362(a) pursuant to sections 362(c)(1,2), that is, for lack of adequate protection, and because the property lacks equity and the debtor has no possibility of effective reorganization. Debtor opposed the motion to lift stay on the grounds that she has offered adequate protection payments in the amount of $3,367 per month. RL requests the dismissal of the petition pursuant to section 1112(b) alleging that the debtor has failed to maintain appropriate insurance in order to protect the estate and the public, has failed to provide the information or attend the meetings requested by the United States Trustee, and filed the petition in bad faith. Debtor filed an opposition to the motion to dismiss alleging that evidence of insurance has been provided and that she is in the process of complying with the requests made by the United States Trustee.

The parties filed a joint pretrial report prior to the hearing. The parties submit that the following facts are uncontested:

1. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 19, 2018 as a small business, as said term is defined in 11 U.S.C. § 101(51D).

2. Debtor has filed the following prior petitions: 10-11527, 11-03193, 12-09330 and 13-09500. The debtor states that of these petitions she only authorized one filing.

3. The debtor is the owner and operator of a gas service station located at State Road 110, Km. 6.4, Montaña Ward, Aguadilla, Puerto Rico, facility UST-89-0186. This debtor's only income producing property of the estate.

4. The property is encumbered by a commercial lien in favor of creditor RL Capital International, LLC in the amount of $1,932,971.59 as stated in proof of claim 5. The property given as collateral to RL is valued in the amount of $470,000.00. The appraised value of $470,00 is submitted solely for the purpose of the matters before the court. The Loan is secured by the following real property (the "Real Estate Collateral"):

"**--- RÚSTICA**: Parcela radicada en el Barrio Montaña del término municipal de Aguadilla, Puerto Rico, con una cabida superficial de mil ochocientos punto cero cero (1,800.00) metros cuadrados, y en lindes por el NORTE, en cuarenta punto cero cero (40.00) metros, con terrenos de la finca principal; por el SUR, en cuarenta punto cero cero (40.00) con la Carretera Estatal Número Ciento Diez (110); por el ESTE y OESTE, en cuarenta y cinco punto cero cero (45.00) metros, ambas colindancias, con terrenos de la finca principal. Contiene una estructura dedicada a estación de gasolina. --------------------------------------------------------------

--- La propiedad antes descrita consta inscrita al folio ciento diecisiete (117) del tomo ciento setenta y seis (176) de Aguadilla, Registro de la Propiedad de Puerto Rico, Sección de Aguadilla, finca número siete mil quinientos veinticinco (7,525).

5. The real estate collateral is composed of one thousand eight hundred square meters (1,800 m2) land lot, which has a gas station.

6. The debtor defaulted on its obligation with RL loans prior to filing the petition.

7. Scotiabank of Puerto Rico obtained a judgment in its favor in the Puerto Rico state court. As per said Judgment Debtor had failed to make payment to lender as of February 18, 2009.

8. Scotiabank and RL requested the state court in case number ACD2009-0097 that RL be included as a creditor.

9. RL and Scotiabank scheduled a judicial foreclosure sale to obtain title of the real estate collateral.

10. The debtor filed the petition before the judicial sale.

2

**Other facts**

1. Scotiabank and/or RL have funded the payment of all property taxes since Debtor failed to make payment as of February 18, 2009 up until 2015.

2. Debtor's only other secured creditors are PR Asset Portfolio 2013 and Centro de Recaudación de Ingresos Municipales ("CRIM") with a claim in the amount of $1,578.55.

3. As to unsecured debts, Debtor's schedules and the claims filed show a total of $65,092.14 in addition to the amounts owed to RL for any deficiency.    4. Based on the value of the Property and pursuant to 11 U.S.C. § 506(a) and RL deficiency, RL holds over 60% of the secured claims and 96% of the unsecured claims in this case.

**Evidence presented at October 9, 2018 hearing**

RL proffered the testimony of Mr. Danny Collazo Sepúlveda, an Inspector with the Environmental Quality Board ("EQB"), who would present negative certifications regarding EQB permit for underground gas tanks dated September 25, 2018 and June 1, 2016 for the facility owned by the debtor identified as UST-89-0186 and located at Road 110, Km. 6.4, Montaña Ward, Aguadilla, Puerto Rico. The EQB permit is required by applicable regulations, that is, 40 CFT Parts 280 and 290. Debtor did not object to the proffer not to the exhibits in support of the same.

RL also presented evidence that the debtor had received credit counseling in case number 11-03193 and had appeared at a 341 meeting in case number 12-09330. This evidence contradicts the debtor's assertions that she had authorized only one prior petition. The current petition discloses the four prior petitions. Counsel for the debtor argued that the insurance documents submitted by the debtor do not show that the property given as collateral is insured. Counsel also argued that the last payment made by the debtor to the secured creditor was in 2010.

3

The debtor testified assisted by an interpreter. She stated that insurance for the gas station had been obtained through MAPFRE and also a certificate of liability by a general insurance broker. Debtor further testified that all tests for the EQB permit had been completed by Mechanical Engineer Luis Guzmán.

The Debtor reaffirmed that she had only authorized the filing of one prior petition by attorney Armando Cardona, from the law offices of attorney Rolando Silva.

Debtor testified, based on Schedules I and J, that her gross income for the last twelve months was approximately $400,000, that is $68,000 gross monthly sales and $63,740 monthly expenses for a balance $4,260 of net income from sales. Debtor also receives monthly rent from leased space to Subway in the amount of $2,000. Therefore, she has monthly disposable income of $7,700. In her opinion, this amount is sufficient to pay RL. The court notes that the amounts indicated by the debtor do not contemplate any loan payment. She also stated that she could obtain the EQB permits within a short period of time. Upon cross examination she did not recall if the gas station was inspected in 2016, admits to having been fined in the amount of $15,000 in 2016 and to not having paid the fine.

After considering debtor's opinion in light of the history of payments and the monthly reports of operation filed, the court concludes that the debtor failed to meet her burden of proof to establish that the reorganization is feasible within a reasonable time. The monthly reports of operation filed don't sustain the conclusion that the reorganization is feasible. See report for June 2018, which shows net proceeds of $741.26; the report for July 2018, which reports a deficiency of $9,780.79; and the report for August 2018 showing a net receipt of $16,529.86. The court notes that the operating reports lack information regarding operational expenses as: payroll, taxes (both federal and state), property taxes (CRIM), municipal taxes, workmen compensation, sales

tax (IVU), utilities, bank debt service (RL and PR Asset Portfolio 2013), contract labor and professional services.

Debtor does not have the financial capacity or means to make the require payment in order to pay in full the secured and unsecured creditors under the absolute priority rule.

The evidence introduced at the hearing established that Debtor lacks a permit or authorization to operate underground tank storage system in clear violation of federal and state law (40 CFR 280-290), since the year 2006

Debtor's gas station is identified as facility UST-89-0186 by the Environmental Quality Board, located at Road 110 Km 6.4 Montaña Ward, Aguadilla PR. The Debtor testified she had been fined by the Environmental Quality Board in the sum of $15,000 and that as of the date of the hearing Debtor had not paid said fine.

The record shows that Debtor has no public liability insurance, property insurance nor underground tank pollution liability insurance to operate safely and adequately a gas station posing a risk to the estate or the public 11 USC 1112(b) (1) (c) (certain certificates of insurance identification a and b were presented to the Debtor but were not admitted in evidence).

**Jurisdiction**

The court has jurisdiction over the matters before the court under 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The matters are core proceedings under 28 U.S.C. §157(b)(2)(A,G).

**Motion to Lift Stay**

The automatic stay provisions of 11 U.S.C. § 362(a) are fundamental to allow a chapter 11 debtor a reasonable attempt to reorganize. The automatic stay acts as an injunction to protect the property of the estate and becomes operative by the mere filing of a bankruptcy petition. In re

Soares, 107 F.3d 969, 971 (1st Cir.1997). Hence, the "automatic" reference in the statutory provision and its effect. The broad scope and strength of the automatic stay in favor of the debtor is balanced by the rights afforded to creditors in 11 U.S.C. § 362(d)-(g). A party seeking relief from the automatic stay must file a motion under § 362(d) and Fed. R. Bankr. P. 4001.

An undersecured creditor may file a motion for relief from stay against property of the estate on the ground that the debtor has no equity in the property and that the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The party seeking relief has the burden of proving that the debtor has no equity in the property, and the party opposing the relief, the debtor in this case, has the burden on all other issues. 11 U.S.C. § 362(g). As to the first prong, whether there is equity in the property given as collateral, it is undisputed that there is no equity in the property given as collateral to the moving creditor, RL. Thus, the issue before the court is whether the debtor has met its burden of establishing that the property is necessary to an effective reorganization.

The Supreme Court in United Savings Association of Texas v. Timbers of Inwood Forest Associates ("Timbers"), 484 U.S. 365, 375–376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), held that to survive a motion to lift stay under section 362(c)(2) there must be a reasonable possibility of a successful reorganization within a reasonable time. the debtor is a single asset real estate case. Although the Timbers test has been limited by the 1994 amendment to § 362(d)(3) of the Bankruptcy Code with respect to single asset real estate cases, the court finds that such a provision need not be invoked in this case as the debtor filed a chapter 11 plan on October 22, 2018, after the hearing on the motions subject of this opinion and order.

The Court finds that Debtor has no equity in the property. Therefore, RL, as movant on the motion for relief from stay, has the burden to prove that Debtor lacks equity in the property

pursuant to 11 U.S.C. § 362(g)(1). It is undisputed that the Debtor has no equity in the Property as RL's debts secured by liens on the Property exceed the value of the property. RL's debts of $1,932,971.59, secured by liens on the property substantially exceed the property's value of $470,000.

RL having met its initial burden of showing that there is no equity in the properties given as collateral to its loans, the Debtor must show that the Property is necessary for an effective reorganization. Pursuant to 11 U.S.C. § 362(g)(2), Debtor has the burden of proof on all issues besides lack of equity in regard to relief from the automatic stay under 11 U.S.C. § 362(d)(2). In particular, Debtor has the burden to prove a "reasonable possibility of a successful reorganization within a reasonable time." In re Anderson, 913 F.2d 530, 531 (8th Cir.1990). Debtor's Property is not necessary to an effective reorganization unless Debtor proves a "reasonable possibility of a successful reorganization within a reasonable time." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). As stated by the Eleventh Circuit, "[f]or property to be 'necessary to an effective reorganization' of the debtor ... it must be demonstrated that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is insufficient." In re Albany Partners, Ltd., 749 F.2d 670, 673, n. 7 (Bankr.11th Cir.1984) (Bankruptcy was dismissed and automatic stay annulled where court found it unlikely that Debtor operator of a hotel could implement an effective Chapter 11 reorganization.); In re Snapwoods Apartments of Dekalb County, Ltd., 153 B.R. 524, 526 (Bankr.D.Ohio 1993) (Automatic stay lifted as to secured creditor where Debtor could not demonstrate that successful reorganization was likely as the Debtor's past and current net operating income of apartment complex was considerably less than their projected amount.); In re Canal Place Ltd. Partnership, 921 F.2d 569, 577 (Bankr.La.1991)

7

(Automatic stay lifted where Debtor's entire plan was based on avoiding foreclosure while awaiting more favorable economic conditions.); In re Bloomington Investors, Limited Partnership, 114 B.R. 174 (D.Minn.1990) (Stay lifted where hotel was worth approximately $6,000,000 less than amount of secured claim and Debtor did not meet its burden of effectuating successful reorganization).

The court finds that the Debtor has not met its burden to demonstrate a reasonable possibility of reorganization within a reasonable amount of time. The evidence showed that, Debtor has little possibility of a successful reorganization. It is unlikely that Debtor can generate enough income to pay the secured debt owed to RL, particularly if RL makes an 11 U.S.C. § 1111(b) election, in which case Debtor is required to treat the entire amount of RLs claim as secured, without regard to the value of the 'property. See In re Jones, 152 B.R. 155, (Bankr.E.D.Mich.1993) ("[A]n undersecured creditor can defend itself against strip down by making the § 1111(b)(2) election, which generally permits the creditor to maintain secured status with respect to its entire claim, rather than in an amount equal only to the collateral's value."); In re Griffiths, 27 B.R. 873, 876–77 (Bankr.D.Kan.1983) (Creditor's § 1111(b)(2) election prevents a "cram down" of creditor's secured claim). Accordingly, Debtor has not met its burden of proof that it can effectively reorganize in a reasonable amount of time. In re River East Plaza, LLC, 669 F.3d 826, 833–34 (7th Cir.2012) (Bankruptcy court properly dismissed case in single-asset real estate case and granted primary creditor relief from the automatic stay where creditor made an 1111(b)-election opting to treat entire claim, including deficiency as secured for purposes of bankruptcy plan and debtor could not provide creditor substitute collateral to satisfy the requirements of the Bankruptcy Code.)

Debtor cannot reorganize within a reasonable amount of time as it has no ability to fund operations either during or after bankruptcy. Debtor testified that the only source of Debtor's income is from the operation of the gas station and rental to Subway. Debtor currently has no funds, and Debtor has little or no probability of obtaining postpetition financing as it has not made any payment to the moving secured creditor since 2010 and the full amount of the loans are due.

Rehabilitation has also been considered in the dismissal context and has been defined as whether the debtor will be able to reestablish its business. "... the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6][a][ii] (16th ed.2013). "Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.' " In re Creekside Senior Apts., L.P., 489 B.R. 51, 61 (B.A.P. 6th Cir.2013) citing In re Westgate Props., Ltd., 432 B.R. 720, 723 (Bankr.N.D.Ohio 2010) (quoting In re V. Cos., 274 B.R. 721, 725 (Bankr.N.D.Ohio 2002)). "Rehabilitation is the restoration of a business' vitality and depends on whether the debtor can formulate within a reasonable amount of time a reasonably detailed business plan." In re 221–06 Merrick Blvd. Assocs. LLC, 2010 Bankr.Lexis 4431, *5 (Bankr.E.D.N.Y.2010). The purpose of Section 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Loop

Corp. v. United States Tr., 379 F.3d 511, 516 (8th Cir.2004) (quoting In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr.S.D.N.Y.1995)).

Consequently, since the property given as collateral lacks equity and the debtor has failed to meet her burden of reasonable reorganization within a reasonable period of time, the motion to lift stay is granted.

The court declines to discuss whether the offer of adequate protection is reasonable as even if it were, the debtor has not shown the ability to make payments up to confirmation.

**Motion to Dismiss**

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court, after notice and a hearing, to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to 11 U.S.C. § 1112(b)(2). 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but provides a list of circumstances which constitute "cause" for conversion or dismissal. This list of causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr.D.N.H.2007).

The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed.2013). "Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. The court, after finding cause, has broad discretion to determine whether conversion or dismissal is in the best interest of creditors

10

and the estate. See <u>Gilroy v. Ameriquest Mortg. Co. (In re Gilroy)</u>, 2008 Bankr.Lexis 3968 (B.A.P. 1st Cir.2008); 2008 WL 4531982. However, if the movant proves that there is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4) by the preponderance of the evidence standard, the court must find that movant has established cause. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed.2012).

Once "cause" has been established, the burden shifts to the debtor to identify unusual circumstances that evince that conversion or dismissal is not in the best interest of creditors and the estate. Even, if there are no unusual circumstances, the court may not convert or dismiss a case if the debtor establishes and the court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." <u>In re Orbit Petroleum, Inc.</u> 395 B.R. 145, 148 (Bankr.D.N.M.2008).

Lack of Good Faith (or Bad Faith) may be grounds for dismissal under section 112(b). This court in <u>In re Costa Bonita Beach Resort Inc.</u>, 479 B.R. 14 (Bankr.D.P.R.2012) held that lack of good faith (or bad faith) in filing a Chapter 11 petition constitutes "cause" to dismiss a Chapter 11 petition pursuant to 11 U.S.C. § 1112(b)(1). This court also rejected the use of the mechanical checklist approach to determine lack of good faith (or bad faith) for all cases, irrespective of whether they fall under the SARE category pursuant to 11 U.S.C. § 101(51B).

The court held the following in <u>In re Costa Bonita Beach Resort Inc.</u>, regarding lack of good faith (or bad faith) as a cause for dismissal of a Chapter 11 petition:

"Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. §

11

1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute "cause" to dismiss a Chapter 11 petition under 11 U.S.C. § 1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?, 14 Am. Bankr.Inst. L.Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of the circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code.

Several Circuits have determined that lack of good faith (or bad faith) in filing a chapter 11 bankruptcy petition constitutes "cause" to dismiss or convert a case to Chapter 7 pursuant to 11 U .S.C. § 1112(b). See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068 (5th Cir.1986); In re Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814 (5th Cir.1991); Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); Trident Assocs. Ltd. Partnership v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F.3d 127 (6th Cir.1995); NMSBPCSLDHB, L .P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108 (3rd Cir.2004); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir.1984). The First Circuit has not decided whether lack of good faith (or bad faith) in the filing of a Chapter 11 bankruptcy petition constitutes "cause" under 11 U.S.C. § 1112(b). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F.3d 21, 24 (1st Cir.2007). One court declined the proposition that 11 U.S.C. § 1 112(b) imposes a good faith filing requirement in a SARE case. See In re Victoria Ltd. Partnership, 187 B.R. 54, (Bankr.D.Mass.1995).

The First Circuit has determined that if 11 U.S.C. § 1112(b) imposes a good faith filing requirement, then it is the movant that must establish prima facie that the petition was filed in bad faith before the burden shifts to the debtor. See In re Capitol Food Corp., 490 F.3d at 24 ("Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we need not address this matter in the present case. Even the courts which have found a good faith filing requirement would demand that Fields Station first make prima facie showing that Capital Food filed its petition in bad faith."); Farnsworth v. Morse (In re Farnsworth), 2009 Bankr.Lexis 3699, *18, (B.A.P. 1st Cir.2009); In re Miller, 2009 Bankr.Lexis

12

3351, *4 (Bankr.D.Mass.2009). The First Circuit noted that, "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." In re Capitol Food Corp., 490 F.3d at 25 citing In re Liberate Techs., 314 B.R. 206, 216 (Bankr.N.D.Cal.2004). The First Circuit also observed that a good faith petition must seek to preserve or create some value that would otherwise be lost outside of bankruptcy and that it is not bad faith to seek to gain an advantage from declaring bankruptcy. Id. at 25.

The determination of whether the movant has established prima facie that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances. See In re Farnsworth, 2009 Bankr.Lexis 3699, *20 citing Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 482 (1st Cir.2005) aff'd, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956, fn. 11 (U.S.2007); Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir.2012). Good faith is driven by the congressional intent of Chapter 11 relief. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and exiting bankruptcy relieved of burdensome debts and obligations." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, § 11.1 (5th ed.2011).

The totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the confirmation of the plan). See In re Puffer, 674 F.3d at 81 ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue

the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F.3d 78, 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption." Id. 479 B.R. at 39–40.

The facts o this case show that the debtor has not made any payment to the secured creditor since 2010, foreclosure has been stalled since the filing of the first petition on December 8, 2010, irrespective of whether or not the debtor expressly authorized the filing of the other three petitions prior to the present one.  The filing of this petition was on the eve of the public sale.  The debtor has not shown reasonable likelihood of rehabilitation within a reasonable period of time.  The combination of these factors do establish that the petition was filed in bad faith, that is, to continue forestalling execution.

The failure to maintain appropriate insurance is cause for the conversion or dismissal of the Debtor's case. 11 U.S.C. § 1112(b)(4)(C); see also Derivium Capital LLC v. U.S. Trustee (In re Derivium Capital LLC), No. 5 Civ. 10845, 2006 WL 1317021, *11 (S.D.N.Y. May 12, 2006) (affirming the bankruptcy court's decision to convert a chapter 11 case partially because the debtor lacked proper insurance coverage); In re Van Eck, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed in part, because the debtor failed to show that there was insurance on residential property he owed.).

Section 1112(b)(4)(C) identifies as a separate cause for conversion or dismissal a debtor's failure to "maintain appropriate insurance that pose a risk to the estate or the public". 11 U.S.C. § 1112(b)(4)(C). This court finds that the debtor failed to show evidence of insurance as of the

date of the hearing. Therefore, Rl has established cause for dismissal pusrsuant to section 1112(b)(4)(C).

### Conclusion

Based on the above, the court finds that there exists sufficient cause for the dismissal or the conversion of the case to a Chapter 7 proceeding pursuant to 11 U.S.C. § 1112(b)(4)(C) and for filing the petition in bad faith. No "unusual circumstances" have been demonstrated. Although dismissal moots the request to lift the automatic stay, the court finds that RL did meet its burden to lift the automatic stay.

The case is hereby dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this  day 7th of November 2018.

Enrique S. Lamoutte
United States Bankruptcy Judge

15